**BARTHEL LEGAL, APC**
Nicholas Barthel, Esq. (319105)
nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
Carlsbad, CA 92008
Telephone: (760) 259-0033
Facsimile: (760) 536-9010

*[Additional Counsel May Appear on Signature Page]*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIKESH NAIDU, <br><br> *Plaintiff*, <br><br> v. <br><br> THE BANCORP. BANK, N.A., CHIME FINANCIAL, INC. F/K/A 1DEBIT, INC., and MOONPAY USA LLC, <br> *Defendants*. | Case No. <br><br> **COMPLAINT** <br><br> **JURY DEMANDED** |

Navikesh Naidu, Plaintiff herein, by his attorneys, alleges and complains of Defendants The Bancorp. Bank N.A., Chime Financial, Inc. F/K/A 1debit, Inc., and Moonpay USA LLC as follows:

### PRELIMINARY STATEMENT

1. From about March 10, 2023, to May 15, 2023, someone unknown to Plaintiff unlawfully accessed Plaintiff's account with Chime Financial, Inc. F/K/A 1debit, Inc. ("Chime"), which was linked to his savings account at The Bancorp. Bank N.A. ("Bankcorp.").

2. The perpetrator made multiple fraudulent bitcoin purchases from MoonPay USA LLC ("MoonPay") and transferred it to a Zengo wallet address.

3. The unauthorized transactions and withdrawals totaled approximately $47,339.66.

- 1

4. Plaintiff immediately and repeatedly advised Defendants that the transactions were unauthorized.

5. Congress passed the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* (EFTA) specifically to protect consumers in circumstances such as these. State laws provide them with similar protections.

6. Nevertheless, despite its obligation under federal and state laws to promptly credit Plaintiff's account in full, Defendants refused to credit Plaintiff's account for the unauthorized transactions.

7. Plaintiff therefore bring claims against Defendants for violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"); Article 4A of the California Uniform Commercial Code ("UCC"); California Business & Professions Code § 17200, et seq.; Conversion; negligence; and breach of contract.

## JURISDICTION AND VENUE

8. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

9. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

10. Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

11. Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conducts business here.

## PARTIES

12. Plaintiff is a natural person residing in Elk Grove, California.

COMPLAINT - 2

13. Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6). Plaintiff's account with Defendants was used for personal, family, or household purposes.

14. Chime Financial, Inc. F/K/A 1debit, Inc. is a Delaware corporation duly authorized to do business in the state of California.

15. The Bancorp. Bank, N.A. is a "financial institution" formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

16. The Bancorp. Bank, N.A.'s headquarters and principal place of business is located in Sioux Falls, South Dakota.

17. Moonpay USA LLC's headquarters and principal place of business is located in Miami, Florida.

18. Each Defendant was, at all times relevant to this Complaint, a "creditor," as defined by 15 U.S.C. § 1602(g).

**FACTS**

19. On information and belief, Defendant Bancorp. holds the Debit Cards and handles the banking services of Chime account holders.

20. On information and belief, at all times material herein, Defendants Bankcorp. and Chime operated as a common enterprise while engaging in unlawful conduct, including the violations of law described herein.

21. In light of the foregoing, Defendants Bankcorp. and Chime are jointly and severally liable for the acts or practices alleged herein.

22. On or about March 10, 2023, Plaintiff lost his wallet, which contained his debit cards, credit cards and other IDs.

COMPLAINT - 3

23. That same day, Plaintiff deactivated his cards through the Chime online phone application.

24. On or about March 15, 2023, Plaintiff received an email from Chime stating that his account balance was $0.

25. Plaintiff immediately went to check his online app and noticed unauthorized charges made in his Chime account.

26. Plaintiff immediately contacted Chime through their chat support to dispute the transaction.

27. Chime's representative informed Plaintiff that it would cancel the transactions and restore the money taken through unauthorized transactions back to his account.

28. With this assurance, from the months that followed, Plaintiff continued to deposit money into his Chime account.

29. On or about May 11, 2023, Plaintiff noticed that his account was drained by approximately $47,339.66 ("Stolen Funds").

30. Plaintiff immediately called Chime to dispute the transactions.

31. Plaintiff learned that an unknown perpetrator used his account to purchase bitcoin from Moonpay and transferred it to a Zengo wallet address.

32. Plaintiff does not own any Moonpay account or a Zengo wallet.

33. Plaintiff contacted Moonpay to report the fraud.

34. Moonpay representative informed Plaintiff that the perpetrator was using an email with Plaintiff's name (i.e., Navikeshnaidu@yahoo.com).

35. Plaintiff does not own the email used to transact in Moonpay.

COMPLAINT - 4

36. On or about May 12, 2023, Chime sent an email to Plaintiff stating that they had made the decision to end the banking relationship with Plaintiff and closed the account.

37. On or about May 24, 2023, Chime sent Plaintiff a letter denying his dispute and stating that they it had concluded that no error occurred.

38. On or about May 11, 2023, Plaintiff requested the documents Chime replied upon for the investigation.

39. On or about May 29, 2023, Plaintiff requested that Chime re-open the account.

40. On or about June 7, 2023, Chime sent Plaintiff an email stating that it would complete the investigation no later than August 27, 2023.

41. On or about June 16, 2023, Chime sent Plaintiff the documents it relied upon in their investigation.

42. To date, Plaintiff has not been able to access the account.

43. To date, Defendants have not reimbursed Plaintiff for the Stolen Funds.

**FIRST CLAIM FOR RELIEF**
**(Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq*.)**

44. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

45. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendants bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

46. Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-

COMPLAINT - 5

> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

47. This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

> The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):
>
> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
>
> (2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:
>
> (i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
>
> (ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

48. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. 15 U.S.C. § 1693g(b).

49. Defendants cannot meet its burden of proof here, where Plaintiff:

   a. Promptly disputed the transactions;

COMPLAINT - 6

      b. Has no criminal history

      c. Has no history of filing false disputes; and

      d. The thefts are inconsistent with Plaintiff's pattern of use.

50. Defendants also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d).  See CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

51. As a direct and proximate result of Defendants's conduct,  Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

52. On information and belief, Defendants did not conduct a good faith investigation regarding the stolen funds.

53. Defendants did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendants.

54. Defendants did not credit Plaintiff's account for the Stolen Funds.

55. Defendants's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff' account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff' account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.  Defendants's failure to provisionally and finally credit Plaintiff' account provides an additional basis for treble damages.

COMPLAINT - 7

56. As a direct and proximate result of Defendants's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(California UCC Article 4A)**

57. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

58. Pursuant to UCC § 4-A-202(1), "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

UCC § 4-A-202(2) further provides:

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if
>
> (a) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and
>
> (b) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

59. Defendants failed to establish and/or follow a commercially reasonable security procedure with regard to Plaintiff's Account.

60. Specifically, Defendants' security procedure fails to flag and hold obviously fraudulent and unauthorized transactions such as the ones at issue here.

61. The unauthorized transactions on Plaintiff's Account bore a series of characteristics that, when taken together, render the transactions suspect, and likely to be

COMPLAINT - 8

fraudulent combination of troubling factors, flagged the transactions as suspect, and held or rejected the transactions as likely to be fraudulent.

62. For example, and without limitation, the transactions:

    a. were entirely out of character with Plaintiff's history of account usage;

    b. drained the Account balance;

    c. likely occurred on a new device not previously associated with the Account;

    d. likely occurred via a new IP address not previously associated with the Account; and

    e. occurred immediately after the password on the account was reset.

Any commercially reasonable policy would have assessed these events and prevented the unauthorized transfers from occurring.

63. Indeed, Defendants acknowledged the suspicious and unauthorized nature of these transactions based on this same information – all of which was available to it at the time of the transactions – but only after it processed the transfers.

64. Defendants also did not process the transfers in good faith. Specifically, Defendants' willful blindness to the many badges of fraud present here constituted bad faith acceptance of the unauthorized payment orders.

65. In sum, Defendants violated UCC § 4-A-202 by accepting unauthorized payment orders in connection with Plaintiff's account, failing to establish and/or follow commercially reasonable security procedures, and not processing the transactions in good faith.

66. Plaintiff is therefore entitled to a refund of the full amounts of the unauthorized payment orders, plus interest.

## THIRD CLAIM FOR RELIEF
(California Business & Professions Code § 17200, et seq.)

67. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

68. Defendants engaged in unfair acts and practices with respect to its services by denying transactions alleged to be unauthorized without first conducting a reasonable inquiry; by denying transactions alleged to be unauthorized despite finding that the transactions were unauthorized; by denying transactions alleged to be unauthorized that it has no legitimate basis to conclude were authorized; by denying requests to reverse unauthorized transactions without notifying the accountholder of the accountholder's right to reproductions of all documents on which it relied in reaching its decision; and by establishing sub-standard security practices and procedures described herein.

69. The acts and practices complained of herein constitute unfair business practices because they are immoral, unethical, oppressive, unscrupulous, unconscionable, substantially injurious to the general public, and offensive to public policy.

70. Defendants' acts and practices were likely to deceive Plaintiff and the public regarding their rights.

71. Defendants failed to completely investigate the fraudulent transactions, denied transactions were fraudulent with no legitimate basis for doing so, placed the burden on Plaintiff and the general public to prove the transactions were unauthorized when the law requires the opposite, and failed to inform Plaintiff and the general public of their legal rights.

72. The business acts and practices of Defendants constitute fraudulent business practices because they are likely to deceive the public and affected consumers as to their legal

COMPLAINT - 10

rights and obligations, and by use of such deception, may preclude consumers from exercising legal rights to which they are entitled.

73. As a direct and proximate result of Defendants' acts and unfair practices, Plaintiff and the public were injured and lost money or property, including but not limited to, the harm suffered as a result of fraudulent transfers made their accounts with Defendants.

74. As a direct and proximate result of the acts and practices described herein, Defendants has received and collected substantial monies or property to which Defendants is not entitled. These illicit profits should be disgorged.

75. Defendants deal uniformly with a large volume of customers who dispute unauthorized charges. For example, Defendants' misconduct as set forth above is part of uniform policy and practice, as reflected in its standardized, boilerplate form communications. Each of Defendants' deceptive acts and practices set forth above therefore have a broad impact on consumers.

76. The harm these practices caused to Plaintiff and the general public outweigh their utility, if any.

77. Plaintiff is entitled under the UCL to enjoin these acts and practices and to obtain restitution of all funds obtained by Defendants by reason of and through the use of these unlawful and fraudulent acts and practices. Pursuant to the UCL, Plaintiff, individually and on behalf of all members of the general public who are, have been, or may be subjected to Defendants' unlawful and fraudulent business acts and practices are entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, real or

COMPLAINT - 11

personal, which Defendants acquired by means of such unlawful, unfair and fraudulent business practices.

78. The unlawful, unfair, and fraudulent business acts and practices of Defendants described herein present a continuing threat to Plaintiff and the public in that Defendants is currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by this Court.

79. In addition, Plaintiff are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure §1021.5.

## FOURTH CLAIM FOR RELIEF
### (Common Law Conversion)

80. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

81. Plaintiff has a possessory right to the funds in the Account and that had been transferred to the Moonpay account.

82. Under the circumstances set forth herein, the funds constituted personal property.

83. Defendants intentionally and without authority assumed and exercised control over Plaintiff' funds.

84. Defendants' dominion over the funds and interference with the funds—including allowing the transfer of the Stolen Funds out of Plaintiff's Account—was in derogation of Plaintiff' rights, including but not limited to Plaintiff' right to use the funds as they saw fit and have the funds returned to them.

85. Plaintiff demanded that Defendants return the funds, but it has not.

86. As a result of Defendants' actions, Plaintiff has suffered actual damages, including but not limited to the amount of the funds converted.

### FIFTH CLAIM FOR RELIEF
### Negligence

87. Defendant Moonpay had a duty to prevent its platform from being used as a conduit for fraudulent and unauthorized bank transfers.

88. Moonpay breached its duty by allowing the fraudulent transfers herein to occur.

89. Moonpay caused damage to Plaintiff in the amount of the Stolen Funds.

### SIXTH CLAIM FOR RELIEF
### (Breach of Contract)

90. Plaintiff repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

91. On information and belief, Defendants had an implied duty under its contract with Plaintiff to use commercially reasonable efforts to protect Plaintiff' account from unauthorized access.

92. On information and belief, Defendants further assumed a duty under the contract to make Plaintiff whole for any unauthorized access, conditioned upon his notifying Defendants of the unauthorized access.

93. By reporting the unauthorized transfers to Defendants on the day they occurred, Plaintiff met any duty imposed by contract to provide notice of unauthorized access to Defendants.

**WHEREFORE**, Plaintiff respectfully prays for relief as set forth below:

COMPLAINT - 13

A. An award of actual damages, including but not limited to the amount of the unauthorized charges (and all associated interest, fees and costs), and emotional distress;

B. An award of statutory damages;

C. An award of punitive damages;

D. An award of treble damages;

E. An order of restitution;

F. Pre-judgment interest;

G. Attorneys' fees, costs, and expenses;

H. An order finding and declaring that Defendants' acts and practices as challenged herein are unlawful, unfair, and fraudulent;

I. Injunctive relief pursuant to California Business and Professions Code §17203, prohibiting Defendants from continuing its unlawful conduct, including but not limited to prohibiting Defendants from (a) denying an unauthorized transaction dispute without first conducting a reasonable inquiry into the allegedly unauthorized transaction and reasonably finding that the transaction was authorized; and (b) denying any request to reverse allegedly unauthorized transactions without notifying the accountholder of the accountholder's right to reproductions of all documents on which Defendants relied in reaching its decision; and

J. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demand a trial by jury as to all issues so triable.

1 | RESPECTFULLY SUBMITTED and DATED this 8th day of November, 2023.

BARTHEL LEGAL, APC

By: */s/Nicholas Barthel*
Nicholas Barthel, Esq.

SCHLANGER LAW GROUP, LLP

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger, *Pro Hac Vice Forthcoming*
Email: dschlanger@consumerprotection.net
SCHLANGER LAW GROUP, LLP
80 Broad Street, Suite 3103
New York, New York 10004
Telephone: (212) 500-6114
Facsimile: (646) 612-7996

BIENSTOCK PLLC

*/s/Martin Bienstock*
Martin Bienstock*, Pro Hac Vice Forthcoming*
Email: Mbienstock@BienstockPLLC.com
BIENSTOCK PLLC
1629 K St. NW,
Suite 300
Washington, DC, 20006
Telephone: 202-908- 6601

*Attorneys for Plaintiff*

COMPLAINT - 15